IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 44536

| | | |
|---|---|---|
| In the Matter of the DOE CHILDREN, | ) | |
| Children Under Eighteen Years of Age. | ) | |
| IDAHO DEPARTMENT OF HEALTH | ) | 2017 Opinion No. 3S |
| and WELFARE, | ) | |
| | ) | Filed: February 23, 2017 |
| Petitioner-Respondent, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| v. | ) | |
| | ) | SUBSTITUTE OPINION |
| JANE DOE (2016-43), | ) | THE COURT'S PRIOR OPINION |
| | ) | DATED JANUARY 13, 2017, IS |
| Respondent-Appellant. | ) | HEREBY WITHDRAWN |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Kent J. Merica, Magistrate.

Judgment terminating parental rights, affirmed.

Knowlton & Miles, PLLC; Mackenzie Jo Welch, Lewiston, for appellant. Mackenzie Jo Welch argued.

Hon. Lawrence G. Wasden, Attorney General; Marcy J. Spilker, Deputy Attorney General, Boise, for respondent. Marcy J. Spilker argued.

GUTIERREZ, Judge

Jane Doe appeals from the magistrate's judgment terminating Jane's parental rights to her three minor children. This Court first considered Jane's appeal on the grounds that the magistrate erred procedurally by failing to issue written findings of fact and conclusions of law. As we further elaborate in our decision below, we remanded the case to the magistrate for issuance of written findings. The case is before us again after the magistrate issued its written findings of fact and conclusions of law and a corresponding amended termination order. Thus, having cured the procedural defect, we now also consider the merits of the magistrate's decision to terminate Jane's parental rights. For the reasons set forth below, we affirm.

1

# I.

## CASE HISTORY

Jane Doe and her husband, John Doe, have an extensive history of drug abuse and have been involved in child protection proceedings in the past. In February 2015, the Department of Health and Welfare (Department) received reports indicating that neither Jane nor John were in compliance with the terms of their probations and that the three children in Jane and John's care were unsafe. These three children are the biological children of Jane, but only two are the biological children of John; the biological father of Jane's oldest child is unknown.

On February 20, 2015, the Department filed a petition asking the magistrate to determine whether the children were within the jurisdiction of the Child Protection Act, alleging the children were neglected and lacking a stable home environment. Additionally, the petition asked the magistrate to remove the children from Jane and John's home and place the children into the temporary legal custody of the Department. The magistrate entered an order granting the Department's requests, and the children were immediately removed from Jane and John's care and placed in shelter care. The children remained in shelter care until an adjudicatory hearing was held, at which point the magistrate found it was in the children's best interests to remain in shelter care. The Department prepared a written case plan for both Jane and John, and the magistrate approved the proposed plan on April 29, 2015.

In June 2015, Jane was arrested for various probation violations. The district court then sentenced Jane to serve out the remainder of her underlying sentence.[1] In August 2015, the magistrate held a permanency hearing on the child protection case, at which time the Department requested the approval of a modified case plan to pursue relative adoption rather than reunification. In its subsequent permanency plan order, the magistrate ordered the Department to file a petition to terminate parental rights within thirty days. The Department then filed a petition to terminate both Jane and John's parental rights to the children in September 2015, followed by an amended petition approximately two weeks later. The magistrate scheduled the termination trial for December 2015.

For reasons unclear from the record, the parties stipulated to postponing the December trial until February 2016. Then, the parties again stipulated to postponing the February schedule

---

[1] The indeterminate portion of this sentence does not end until January 2018.

as Jane was pregnant at the time and the trial would be too close to her due date. The magistrate rescheduled the termination trial for May 2016.

In February 2016, Jane gave birth to a child fathered by John. The Department filed an amended petition under the Child Protection Act to add the new baby to the existing child protection order. The baby was placed in shelter care with the other three children. The magistrate then held the appropriate shelter care and adjudicatory hearings. Ultimately, in May 2016, after the magistrate approved the Department's proposed case plan regarding the baby, the parties stipulated to sever the baby's and the children's child protection proceedings. Jane and John's parental rights to the baby are not at issue in this appeal.

Meanwhile, in March 2016, the Department filed a second amended petition for termination of the parent-child relationship between the three older children and both Jane and John. This amended petition alleged that both parents neglected the children and divided the grounds for termination into four separate counts.

Count I:   The children are neglected as defined in [I.C. §§ 16-1602(31)(b)];[2] 16-2002(3)(a) and 16-2005(1)(b) because they lack proper support or parental care necessary for their health, morals, and well-being, to-wit: [John and Jane] have shown the inability to maintain safe and stable [sic] for their children. Neither parent is able to demonstrate the ability to safely parent their children when they are abusing substances, and it appears that they are still unable to maintain control of their addictions despite all the services they have been offered and that they have completed throughout the past five (5) years of Child Protection Involvement.

Count II:  The children are neglected as defined in I.C. §§ 16-2002(3)(b) and 16-2005(1)(b). The parents have failed to comply with the Court's orders or the case plan in a Child Protective act case.

Count III: The parents have neglected the children. The children are neglected as they are without the proper parental care and control, or subsistence, education, medical or other care and control necessary for their well-being because of the conduct or omission of their parents, guardian, or other custodian or their neglect or refusal to provide them as follows: [Jane and John] have a significant substance abuse history. [Jane and John] have not engaged in any support services recommended by Department staff that has been identified to help them successfully establish a safe life to parent [the children].

---

[2]   Although the petition cited to I.C. § 16-1602(28)(b), this code provision has since been renumbered to I.C. § 16-1602(31)(b).

Count IV: The parent, [Jane], is unable to discharge parental responsibilities and such ability will continue for a prolonged indeterminate period and will be injurious to the health, morals, or well-being of the children, to-wit: [Jane] has been sentenced to a prison term to the . . . Prison, and the Idaho Department of Corrections website reflects a parole eligibility date of March 9, 2017.

The trial for terminating the parental rights of Jane and John as to the children commenced on May 10, 2016. On the following day, when the trial was not concluded, the magistrate scheduled its continuation for July 2016. The trial then continued from July 6 until July 8. During the five days of trial, the magistrate heard testimony from numerous individuals involved in various aspects of the case plan, the children's lives, or the parents' lives. These individuals included the children's foster parents; the guardian ad litem; the parents' probation officer; a police officer; teachers and administrators from treatment facilities; as well as Department employees including visitation supervisors, social workers, and both current and past case managers. These individuals testified regarding the parents' history of drug abuse and relapse; the parents' participation in drug treatment programs; observations of the parents' home; opinions regarding the parents' ability to discipline and supervise the children; the children's extensive behavioral and developmental issues; and the ongoing needs of the children. At the conclusion of trial, the parties were instructed to file their closing arguments by August 12.

The magistrate then held a hearing on October 3, 2016. At this hearing, the magistrate expressed that he had experienced software failure resulting in the permanent loss of a significant amount of his written work. The magistrate indicated he would instead enter his findings of fact and conclusions of law orally on the record. He stated, "This will constitute the only record of the same. The court will not reduce the following to writing, and I'm doing that in the--for the sake of expediency for the parties." The magistrate proceeded to verbally pronounce detailed findings of facts and conclusions of law from the bench.

On the same day, the magistrate entered a written judgment terminating the parent-child relationships between Jane and John and the children. In this written judgment, aside from stating that "it is in [the children's] best interests for the parental rights . . . to be terminated," the judgment did not include any specific findings of fact or conclusions of law. Then, two days after entry of this written judgment, the magistrate entered an order titled, "Amended Findings of Fact, Conclusions of Law, and Order." This order concluded by stating that Jane and John's parental rights were being terminated based upon (1) their failure to follow and complete the

4

case plan, as alleged in Count II, and (2) their conduct which resulted in the children being without proper parental care and control, as alleged in Count III. The magistrate found that the Department did not demonstrate that the parents were unable to discharge their parental responsibilities, as alleged in Count I, and did not terminate on this basis. The order did not address Count IV of the termination petition. The magistrate entered a corresponding amended judgment reiterating its conclusion that termination was in the children's best interests and that the parent-child relationships were terminated.

Although the magistrate treated the termination petition of both parents as a consolidated case, Jane and John each separately appealed the magistrate's judgment. In Jane's appeal, she argued that the magistrate erred both procedurally and on the merits. We were persuaded by Jane's argument that the magistrate erred in failing to issue written findings of fact and conclusions of law, as required by statute. We reiterate our consideration of that issue in the section below.

## II.

### PROCEDURAL DEFICIENCY AND CORRESPONDING REMAND

Jane argued the magistrate violated Jane's right to due process by terminating her parental rights without complying with statutory procedural requirements. Specifically, she argued that the magistrate violated the statutory mandate in I.C. § 16-2010(1) by not issuing a written order containing the findings of fact and conclusions of law. The statute at issue, I.C. § 16-2010(1), states, in relevant part, that "every order of the court terminating the parent and child relationship . . . *shall be in writing* and *shall recite the findings* upon which such order is based, including findings pertaining to the court's jurisdiction." (Emphasis added.)

The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* "Where statutes are not ambiguous, it is the duty of the court to follow the law as written." *Anstine v. Hawkins*, 92 Idaho 561, 563, 447 P.2d 677, 679 (1968).

5

Regarding the plain language of I.C. § 16-2010(1), we considered the phrase "every order of the court" to be inclusive of any court order terminating a parent-child relationship. Further, the phrases stating that the order "shall be in writing" and "shall recite the findings" establish the two attributes required of every order. *See State v. Owens*, 158 Idaho 1, 4, 343 P.3d 30, 33 (2015). The word "recite" means that the findings must be "state[d] formally." MERRIAM-WEBSTER DICTIONARY 1895 (3d ed. 1993). Thus, the plain language of I.C. § 16-2010(1) contains an unambiguous directive requiring courts to issue written findings as part of the termination order. Such written findings must include formal statements of the findings upon which it relied in terminating the parent-child relationship.

Neither the magistrate's original judgment nor the amended judgment and corresponding order were in compliance with the statutory mandate of I.C. § 16-2010(1). The original judgment, which effectuated the termination and stated that it was in the best interests of the children to terminate Jane's rights, was statutorily deficient because it did not include a recitation of the facts upon which the court was relying. The amended judgment and corresponding findings and order were also statutorily deficient. In the order, the magistrate attempted to incorporate its oral pronouncements by reference. Idaho Code Section 16-2010(1) requires a court's order to *recite* the findings upon which the court relied in terminating the parent's rights. Because of the statute's specificity in requiring written recitation of findings, we do not consider an order's "incorporation by reference" to be the functional equivalent of a written recital.

Further, although the order did specify that Jane's rights were being terminated pursuant to the charges in Counts II and III, it did not recite any specific findings of fact supporting termination on those grounds. Similarly, the amended judgment recited no facts but instead merely concluded that it was in the children's best interests to terminate Jane's parental rights. The court reporter's transcription of the oral proceedings did not constitute a written order of the court sufficient to satisfy the statutory requirement.

Therefore, because none of the magistrate's orders complied with the statutory mandates of I.C. § 16-2010(1), we remanded both cases back to the magistrate with instructions to enter written findings of fact and conclusions of law and a corresponding amended judgment.

6

## III.
## POST-REMAND CONSIDERATION

Following the order on remand, the magistrate court entered substantial written findings of facts and conclusions of law in conformance with the statutory mandate of I.C. § 16-2010(1). The subsequent written findings of fact and conclusions of law reiterated the magistrate's previous oral findings that the children were neglected pursuant to Counts II and III of the second amended petition termination. The magistrate entered a second amended judgment terminating Jane and John's parental rights to their children. All parties were given an opportunity to submit supplemental briefing for this Court's consideration.

We now consider the merits of Jane's appellate argument that the magistrate erred in terminating Jane's parental rights. A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported

by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## A.      Finding of Neglect

Here, the magistrate terminated Jane's parental rights on the basis of neglect, finding that termination was in the best interests of the children. Specifically, the magistrate found clear and convincing evidence that Jane neglected her children pursuant to the allegations in Counts II and III of the second amended termination petition. Because we conclude that Jane neglected her children pursuant to the grounds alleged in Count III, we need not address Jane's contentions regarding the other grounds considered by the magistrate.[3] *See State, Dep't of Health & Welfare v. Doe*, 149 Idaho 409, 413, 234 P.3d 733, 737 (2010).

Count III alleged that Jane neglected her children by failing to provide the "proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them." Because this language tracks with I.C. § 16-

---

[3]      Accordingly, we do not address Jane's argument regarding the amount of time the children were in the Department's legal custody for purposes of Idaho Code Section 16-2002(b)(3).

1602(31)(a),[4] the magistrate considered whether there was clear and convincing evidence of neglect pursuant to this provision. The magistrate found that Jane neglected her children due to her extensive history of drug abuse and relapse, including drug use while pregnant; repeated law and probation violations; failure to provide stable housing; failure to engage in and maintain counseling and treatment; failure to complete her case plan; and failure to maintain consistent employment.

It is well-settled that a court may properly consider the history of the family both prior to and at the time of State intervention in determining whether clear and convincing evidence of neglect exists. *State v. Doe*, 144 Idaho 839, 843, 172 P.3d 1114, 1118 (2007). A court is not constrained to considering only the conditions as they exist at the time of the hearing. *Id.* A court may also consider a parent's performance on a case plan when considering whether that parent has neglected their children pursuant to I.C. § 16-2002(3)(a). *In re Doe*, 151 Idaho 356, 365, 256 P.3d 764, 773 (2011).

Jane's primary argument on appeal is that the magistrate failed to take into consideration all of the relevant evidence and assign that evidence the proper weight. Jane first contends the magistrate improperly considered whether Jane completed tasks on her case plan as a basis for finding neglect. She argues that she was only given a short period of time to comply before she was incarcerated. While the magistrate did consider Jane's compliance with the case plan before she was incarcerated, the magistrate did not use this consideration as the sole basis of its finding of neglect. The magistrate considered the totality of Jane's conduct, both before and after the child protection case was initiated.

Jane next contends there is no showing that the magistrate considered evidence regarding her accomplishments toward reunification after her incarceration. A trial court is not free to ignore relevant evidence that has been admitted. *In re Doe*, 157 Idaho 765, 770, 339 P.3d 1169, 1174 (2014). However, when making findings of fact and conclusions of law, a trial judge is not required to recite every piece of evidence it considered or relied upon in reaching its decision. *Id.*

---

[4]      Idaho Code Section 16-1602(31)(a) provides, in relevant part: "'Neglected' means a child . . . [w]ho is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents . . . or their neglect or refusal to provide them."

Here, Jane's assertion is disproven both expressly and implicitly by the magistrate's written findings. The magistrate made clear in his opinion that he considered Jane's progress while incarcerated, noting "she is to be commended for that." The magistrate specifically acknowledged that since being incarcerated, Jane has "completed cognitive behavioral intervention, substance abuse treatment, Thinking For a Change, Moral Reconation Therapy, completed two (2) parenting classes, completed a program entitled 'Darkness to Light,' and 'Strengthening Families.'" Although the magistrate might not have specifically written each accomplishment that Jane suggests is relevant, it is nevertheless clear that the magistrate considered all the relevant evidence in reaching its decision. What the magistrate makes clear from the written opinion is that despite Jane's recent progress, her longstanding history of drug abuse is hard to ignore. With relapses in 2005, 2008, 2012, 2014 and 2015, the magistrate was not persuaded that Jane's recent short-term progress outweighed her history of neglectful conduct.

Turning to Jane's other arguments on appeal, Jane effectively challenges whether there was clear and convincing evidence to support the magistrate's finding of neglect. She itemizes each case plan task and argues why the magistrate's finding was erroneous. First, she contends that certain findings of the magistrate are blatantly incorrect. For example, regarding the magistrate's finding that Jane failed to provide stable housing for the children, Jane argues that it is significant that she was never actually evicted from her housing and that she had never had problems securing new housing in the past. And, regarding the magistrate's finding that Jane visited the casino numerous times, Jane argues that she merely admitted that she had "been going to the casino," not that she went multiple times. Jane also contends that the magistrate mischaracterized the parents' trip to Las Vegas, which occurred in March not January, and mischaracterized the incident during the supervised visit where individuals were locked out of the building. These alleged errors take issue with facts that are immaterial to the magistrate's finding of neglect. Even if these findings were clearly erroneous, they are not so material as to outweigh the other substantial evidence supporting the magistrate's finding of neglect. *See Doe I v. Doe*, 138 Idaho 893, 906, 71 P.3d 1040, 1053 (2003) ("Even if a finding of fact is in error, this Court should disregard such error unless it affects the substantial rights of the parties.").

Next, Jane contends that the magistrate should not have believed certain testimony, as it was either unproven or contradicted. For example, Jane points to her probation officer's

testimony regarding multiple probation violations, missed urinalysis tests and continued drug use, arguing that none of those allegations had accompanying definitive evidentiary proof. Jane's arguments not only ignore other relevant information in the record, but they also ask this Court to reassess the credibility of witnesses. Jane also points to the magistrate's finding that Jane used drugs until June 2015, arguing that the probation officer never testified as such. However, this argument specifically ignores Jane's own admission that she considers her sober date to be June 10, 2015.

Jane's arguments not only ignore evidence in the record at times, but they consistently ask this Court to reweigh the evidence already considered by the magistrate and reach a different conclusion. This Court does not reweigh evidence, but instead defers to the magistrate's "unique ability to accurately weigh the evidence and judge the demeanor of the witnesses and take into account the trial court's superior view of the entire situation." *In re Doe*, 156 Idaho 103, 108, 320 P.3d 1262, 1267 (2014) (internal quotations and citations omitted). The magistrate's findings will be deemed competent, despite possibly conflicting evidence, so long as they are supported by substantial evidence. *Id.*

After careful review of the record, we conclude that substantial and competent evidence supports each of the magistrate's findings regarding Jane's failure to provide the proper care and control necessary for her children's well-being. During the termination trial, there was substantial evidence presented as to Jane's longstanding difficulties with drug abuse and extensive history of involvement with the Department dating back to 2006. The children at issue in this appeal began their involvement with the Department as early as 2011 after one of the children was seriously injured in an automobile accident due to Jane driving while under the influence. There was also substantial evidence of Jane's drug use while pregnant or while the children were in Jane's care. Not only did one of her children test positive for methamphetamine at birth, but Jane admitted to using drugs as late as June 2015. Regardless of whether Jane has ever been evicted, there was substantial and competent evidence to support the magistrate's finding that Jane had failed to provide housing for her children that was both stable and safe.

Next, Jane argues that the magistrate improperly weighted the testimony of the foster parents--who are biased--and the case workers--who are self-serving--over the testimony of the parents and their witnesses. Jane's argument suggests that the nature of a party's interest influences the party's credibility and ability to remain objective. Even if we were to accept

Jane's arguments that the foster parents are biased and the case workers self-serving, we cannot believe that the parents and their witnesses are somehow disinterested parties. Jane's argument that the magistrate should be wary of testimony from involved individuals is not only unsupported by authority, but defies common logic.

Finally, we are not persuaded by Jane's argument that the magistrate should have assigned more weight to Jane's parole eligibility date of January 2017. Even if Jane was granted parole in January 2017, her longstanding history of neglectful conduct is not erased by recent efforts. The Idaho Supreme Court has often held that where a parent's improvements in a child protection case begin only after the initiation of termination proceedings, such efforts are often too late. *See, e.g.*, *Doe*, 151 Idaho at 366, 256 P.3d at 774; *Idaho Dep't of Health & Welfare v. Doe*, 155 Idaho 145, 153, 306 P.3d 230, 238 (Ct. App. 2013). In this instance, the magistrate found, and we agree, that Jane "has never been a consistent presence in the children's lives. She's been absent because of drug usage, absent because the care of the children was overwhelming to her, and absent because of incarceration." Therefore, we conclude that the cumulative testimony before the magistrate constituted substantial and competent evidence demonstrating that Jane neglected her children as defined by I.C. § 16-1602(31)(a). Thus, the magistrate did not err in finding neglect pursuant to I.C. § 16-2002(3)(a).

## B. Best Interests

Where the magistrate finds a statutory ground for termination, the magistrate must also find that it is in the best interests of the children to terminate the parent-child relationship. I.C. § 16-2005(1). When considering the best interests of the child, a trial court may consider numerous factors including the improvement of the child while in foster care, the parent's continuing problems with the law, the parent's efforts to improve his or her situation, the stability and permanency of the home, unemployment of the parent, and the financial contribution of the parent to the child's care after the child is placed in protective custody. *Doe*, 156 Idaho at 111, 320 P.3d at 1270. "The best interest analysis takes into account the reality that children need stability and certainty." *Doe*, 157 Idaho at 772, 339 P.3d at 1176 (internal quotation omitted).

Here, the magistrate focused its inquiry on the improvement of the children while in foster care. The magistrate considered evidence that since being in foster care, the children have improved educationally, emotionally, and developmentally. The magistrate also considered that

the children would suffer in each of those areas each time they were removed from the foster home. The magistrate also focused on the children's need for stability. Recognizing that Jane was not a consistent presence in the children's lives due to drug use, incarceration or inability to parent, the magistrate found that the foster family was better suited to provide the stability needed by the children.

During the termination trial, there was substantial and competent evidence that the children have improved while in foster care. Before entering foster care, the children did not have their emotional, educational, or physical needs met. The children were experiencing emotional disturbances and were developmentally and educationally deficient. After entering foster care, the children began consistently participating in educational programs and counseling services and have experienced significant progress in each of those areas. Evidence demonstrated that Jane did not routinely maintain these services for her children, even though those services were made available to them.

There is also substantial and competent evidence that Jane did not take efforts to improve her situation prior to being incarcerated. She admitted to using drugs up until the time she was incarcerated in June 2015. At that time, the termination proceeding was well underway and the case plan had already been implemented. Jane's history of drug use, beginning in 2006, demonstrates her inability to refrain from methamphetamine use. Despite her improvements since incarceration, her continued stability is unpredictable.

The magistrate opined, and we agree, that the children deserve stability, permanency, and finality. The magistrate did not err in finding that termination of Jane's parental rights was in the best interests of the children.

## IV.

## CONCLUSION

There was clear and convincing evidence that Jane neglected her children by failing to provide the proper parental care and control for their well-being and that termination of Jane's parental rights was in the children's best interests. Accordingly, we affirm the magistrate's judgment terminating Jane's parental rights to her three minor children.

Chief Judge GRATTON and Judge MELANSON **CONCUR**.

13