# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48278

| | | |
|---|---|---|
| In the Interest of:  John Doe I, John Doe II, John Doe III, and Jane Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed:  January 19, 2021 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JOHN DOE and JANE DOE (2020-35), | ) ) | BE CITED AS AUTHORITY |
| Respondents-Appellants. | ) ) ) | |

Appeal from the Magistrate Division of District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Calvin H. Campbell, Magistrate.

Judgment of the magistrate court terminating parental rights, <u>affirmed</u>.

Marilyn Paul, Twin Falls County Public Defender; Laura Z. O'Connell, Deputy Public Defender, Twin Falls, for appellants.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

_____

HUSKEY, Chief Judge

John Doe and Jane Doe appeal from the magistrate court's order terminating their parental rights.  The Does argue the magistrate court's findings that statutory grounds exist for termination of parental rights and termination is in the best interests of the children are not supported by substantial and competent evidence.  Because the magistrate court's findings are supported by substantial and competent evidence, the court's order terminating parental rights is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

John Doe is the father of L.W. and R.W. John Doe's wife, Jane Doe, is the mother of K.J., T.J., and R.W. After nearly two decades of repeated contact with child protection authorities, on May 26, 2017, K.J., T.J., L.W., and R.W. were removed from the Does' home and placed into protective custody because of unstable, unclean, and unsafe living conditions; concerns about physical abuse; and concerns about failure to protect R.W. from sexual abuse from T.J.

The Idaho Department of Health and Welfare (Department) filed a petition pursuant to the Child Protection Act (C.P.A.). The magistrate court held a shelter care hearing and found reasonable cause to believe the children came within the purview of the C.P.A. due to neglect and lack of a stable home environment, and ordered the children into temporary care and custody of the Department. Thereafter, the magistrate court held an adjudicatory hearing and entered an order finding that although reasonable efforts had been made to avoid removal, it was contrary to the children's best interests to be returned to live with the Does. Neither John Doe nor Jane Doe appealed the order.

The magistrate court ordered a case plan for the parties as part of reunification efforts and the case plan was subsequently amended as the case proceeded. The magistrate court held a series of regular status and review hearings and at one point, the court placed K.J., L.W., and R.W. with the Does for an extended home visit. T.J. remained in his previous placement. K.J., L.W., and R.W. remained in the Does' home under protective supervision for approximately eight months, but were again removed from the home when the magistrate court found it was contrary to their welfare to remain with the Does. Accordingly, K.J., L.W., and R.W. were returned to the care of the Department.

The magistrate court continued to hold regular review hearings and annual permanency hearings. Because John and Jane Doe failed to make progress on the case plan, the Department moved for termination of parental rights and a termination trial was held. After the termination trial, the magistrate court entered an order that found statutory grounds existed to terminate John Doe's parental rights to L.W. and R.W. and Jane Doe's parental rights to K.J., T.J., and R.W. because the Does neglected and abused their children. Additionally, the magistrate court found it

is in the children's best interest to terminate the respective parental rights of the Does.[1]  The magistrate court entered its final judgment terminating the parental rights of the Does.  John and Jane Doe timely appeal.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child.  *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002).  This interest is protected by the Fourteenth Amendment to the United States Constitution.  *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007).  Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved.  I.C. § 16-2001(2).  Therefore, the requisites of due process must be met when terminating the parent-child relationship.  *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006).  Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence.  *Id*.  Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence.  *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009).  The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated.  *Id.*  The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required.  *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006).  Clear and convincing evidence is generally

---

[1]    The magistrate court also found statutory grounds for parental termination of the biological father of T.J. and K.J. and the biological mother of L.W and that terminating their parental rights is in the best interests of the children.  Neither party appealed.

understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Upon finding a statutory ground for termination, the court must also find that it is in the best interests of the child to terminate the parent-child relationship. I.C. § 16-2005(1). Both findings must be established by clear and convincing evidence.

### III.

### ANALYSIS

John and Jane Doe argue that there is not substantial and competent evidence to support the magistrate court's finding that: (1) statutory grounds existed to terminate their parental rights because they neglected and abused their children; and (2) the termination of their parental rights is in the children's best interests. In response, the State argues that the magistrate court's findings are supported by substantial and competent evidence.

**A.      Statutory Grounds for Termination**

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a C.P.A. case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C.

4

§ 16-2002(3)(b). Failure to provide children with stable and safe housing may be considered in a neglect determination. *See Matter of Doe Children*, 162 Idaho 69, 77-78, 394 P.3d 112, 120-21 (Ct. App. 2017).

Idaho Code § 16-2002(4) defines "abused" as any conduct included in I.C. § 16-1602(1). Idaho Code § 16-1602(1) provides, in pertinent part, that a child is abused in any case where the child has been a victim of conduct resulting in skin bruising, bleeding, fracture of any bone, or soft tissue swelling.

Here, the magistrate court found that clear and convincing evidence showed that John Doe neglected L.W. and R.W. and Jane Doe neglected K.J., T.J., and R.W. by failing to complete the case plan, including failing to engage in treatment in any meaningful way, and failing to maintain adequate, stable, safe, or sanitary housing for the children. Further, the magistrate court found clear and convincing evidence that John and Jane Doe were physically abusive to the children and failed to protect the children from abuse from others. These findings are supported by substantial and competent evidence.

### 1. Statutory grounds exist for termination of John Doe's parental rights to L.W. and R.W.

The magistrate court's finding that statutory grounds exist to terminate John Doe's parental rights because John Doe neglected and abused L.W. and R.W. is supported by substantial and competent evidence.

#### a. Substantial and competent evidence supports finding of neglect

First, the magistrate court's finding that John Doe neglected L.W. and R.W. by failing to complete the case plan is supported by substantial and competent evidence. L.W. and R.W. had been in the care of the Department for approximately thirty of the thirty-nine months prior to the termination trial. Both Nicholas Wolfley, a social worker with the Department, and Dan Roper, the child welfare supervisor at the Department, testified that despite the Department putting in place multiple case plans throughout the three years prior to the termination trial, John Doe never completed a case plan. Specifically, Wolfley testified that despite the requirements of the case plan, John Doe failed to demonstrate adequate coping strategies for his anger, participate in a manner that was physically and emotionally safe during family counseling sessions, behave productively during scheduled and unscheduled home visits, provide the Department with documentation about relevant medical restrictions, communicate respectfully and professionally

5

with the Department and related organizations, and provide safe, stable, and sanitary housing while Wolfley was assigned to the case.

Not only did John Doe fail to complete the case plan, the evidence suggested he engaged in actions that made it very difficult for the Department and other organizations to fulfill their obligations to assist him pursuant to the case plan. Roper testified that John Doe would actively obstruct the Department's efforts, forcing the Department to seek relief from the magistrate court through the addition of specific language in the case plan. Roper described that during conversations, John Doe was "at odds" with him about everything. During one home visit, Doe was so aggressive that Roper left because he believed it was not safe for him to remain in the Does' home. Tahna Barton, the executive director of Court Appointed Special Advocates for the Fifth Judicial District, testified to similar behavior; she worked with John and Jane Doe until it became clear that she would not be able to continue her efforts safely because of John Doe's aggression. Consequently, Barton continued tracking progress on the case plan without personal contact with the parents. Melissa Uhl, a licensed professional counselor at Crosspointe Family Services, told the magistrate court that John Doe left her threatening voicemails and he was so aggressive during an in-person meeting that she refused to work with the Does from that point forward. John Doe testified that he lost his temper with at least three individuals who had been assigned to the case. Because of John Doe's aggressive and volatile behavior, he was unable to complete any of the treatment programs as required by the case plan.

Second, the magistrate court's finding that John Doe neglected L.W. and R.W. by failing to provide adequately stable, safe, and sanitary housing is supported by clear and convincing evidence. P.J., John Doe's older son who is not a party to the termination proceedings because he is beyond the age of minority, testified that he never felt safe in the household, relatives and friends of John and Jane Doe physically punished the children which left marks upon their bodies, and neither John nor Jane Doe intervened to stop the abuse. Shannon Wilson, a social worker assigned to the case, testified that L.W. disclosed that he witnessed violence in the home. Additionally, multiple witnesses testified that R.W. disclosed that T.J., her half-brother, sexually abused her and that John and Jane Doe were aware of R.W.'s disclosures. Despite the Does' awareness of the alleged sexual abuse, Monte Henderson, a social worker from the Department, testified that, after speaking to the children, he was concerned that John and Jane Doe were not following the safety plan put in place to keep R.W. safe from future sexual abuse. Even R.W.

6

did not feel safe; Barton testified that R.W. disclosed to her that she wanted to ask her parents "why they didn't protect her."

Finally, multiple witnesses, including John and Jane Doe's witness and family friend, testified to the presence of bugs or insects in the home. Stacy Stephens, a licensed clinical social worker and owner of Alliance Family Services, testified that she worked with both John and Jane Doe in multiple homes over the pendency of the proceedings, and the homes were very dirty, with cockroach and bed bug issues that persisted despite multiple organizing and eradication efforts from Alliance Family Services. Barton testified that when the children came into care, it was difficult to find a part of their bodies that was not covered in bed bug bites, and this occurred again when the children returned from protective supervision. Barton recounted that R.W. disclosed that the bugs would cover her bed at night in the Does' home, forcing her to sleep with the lights on. While John Doe disputed that the children were "totally covered" in bug bites, he admitted to the presence of bug bites on their bodies. Roper stated that although the condition of the Does' homes has been a rollercoaster, ultimately, there has been no improvement in either the cleanliness of or bug eradication in the home during the pendency of the case. Thus, the magistrate court's finding that John Doe neglected his children by failing to complete the case plan, including engaging in treatment, and failing to provide adequately stable, safe, and sanitary housing is supported by substantial and competent evidence.

### b. Substantial and competent evidence supports finding of abuse

The magistrate court's finding that John Doe abused his children is supported by substantial and competent evidence. P.J. testified that John Doe physically abused him, including choking him, and that he had seen bruises on L.W. from being hit. Photographs entered as exhibits during the termination trial corroborated P.J.'s testimony, showing bruising on P.J.'s chest, shoulder blade, and behind his ear. P.J. recounted that John and Jane Doe made the children engage in excessive physical activity and required the children to sleep in a tent as punishment, at times for weeks, even when it was too hot or too cold outside.

Stephens testified that P.J. disclosed during counseling that he was very fearful that T.J., John Doe's stepson, was going to be killed by the accelerating abuse in the Does' home. T.J. showed Stephens bruising on his back and told her that John Doe caused the injuries. Uhl stated that K.J., John Doe's other stepson, disclosed that both John and Jane Doe had abused him, including by spanking him with a 2x4 piece of wood as punishment, and that John Doe

7

threatened to hurt Jane Doe if K.J. ever disclosed the abuse. Shannon Wilson, a social worker assigned to the case, testified that she met with K.J., T.J., L.W., and R.W., and the children disclosed violence in the home, both being hit and witnessing the male children being hit. Wilson recalled that R.W. expressed multiple concerns about abuse at home, including spanking, yelling, and being placed in the dog kennel. Multiple witnesses testified that the children exhibited fear of John and Jane Doe during interactions with the parents and often attributed this fear to the Does' discipline in the home. Further, John Doe admitted to using corporal punishment and forcing physical exercises as discipline and that P.J., T.J., and L.W. are guarded around him because of his "rigid" behavior. The magistrate court's finding that John Doe abused his children is supported by substantial and competent evidence.

2.    **Statutory grounds exist for termination of Jane Doe's parental rights to K.J., T.J., and R.W.**

The magistrate court's finding that statutory grounds exist to terminate Jane Doe's parental rights because Jane Doe neglected and abused K.J., T.J., and R.W. is supported by substantial and competent evidence.

a.    **Substantial and competent evidence supports finding of neglect**

The magistrate court's determination that Jane Doe neglected her children is supported by substantial and competent evidence. While R.W. had been in the Department's care for approximately thirty of the thirty-nine months prior to the termination trial, both K.J. and T.J. had been in the Department's care for the entirety of the thirty-nine months. First, the testimony presented during the termination trial was that Jane Doe did not complete a case plan during this time period. Specifically, Wolfley testified that despite the case plan's requirements, Jane Doe failed to attend regular counseling, engage in self-care activities to improve her mental health, provide the Department with information pertaining to her medication management, demonstrate support as recommended for John Doe's mental health treatment and de-escalation, secure stable housing, or alleviate the Department's concerns with her parenting. As with John Doe, Roper told the magistrate court that Jane Doe would actively obstruct the Department's efforts under the case plan, including by refusing to sign releases.

Second, as discussed above, the physical violence used by the Does' family and friends upon the children and Jane Doe's failure to protect R.W. from sexual abuse, established the instability of Jane Doe's home, while the unclean, bug-ridden status of the home provided clear and convincing evidence that her home was not safe or sanitary for the children. Consequently,

8

the testimony supported the magistrate court's finding that Jane Doe did not provide an adequately stable, safe, and sanitary home for her children. Thus, the magistrate court's finding of neglect is supported by clear and convincing evidence.

### b. Substantial and competent evidence supports finding of abuse

The magistrate court's determination that Jane Doe abused her children is supported by substantial and competent evidence. In addition to the evidence discussed earlier, multiple witnesses testified to specific acts of physical abuse by Jane Doe; including forcing physical activities, like push-ups, as punishment; hitting T.J.; using a belt, paddle, and a 2x4 on the children; and tackling, hitting, and holding L.W. to the floor. Accordingly, substantial and competent evidence supports the magistrate court's finding that Jane Doe abused her children.

## B. Best Interests of the Children

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

### 1. Substantial and competent evidence supports magistrate court's finding that terminating John Doe's parental rights is in the best interests of the children

The magistrate court's finding that terminating John Doe's parental rights to L.W. and R.W. is in the best interests of the children is supported by substantial and competent evidence. At the time of the termination trial, the Department had previously received more than thirty child welfare referrals for John Doe, spanning approximately nineteen years. Barton testified that in her experience, the Does' case represents the longest history and most referrals for a case before the children come into care. Multiple witnesses testified that during the nearly two decades of contact with state welfare systems, John Doe made no meaningful improvements to the circumstances that gave rise to the referrals and ultimately brought his children into care in

this case. For example, Roper testified that the Does received significantly more support from and contact with the Department than the average family, but despite the time and resources, Roper had not seen any permanent, meaningful change. Roper believed there was nothing more the Department could have done to assist the Does because it seemed as if the Does did not want to be helped. Barton expressed that she had not seen any improvements in John Doe's anger issues. And, after working with the Does for five years, Stephens told the magistrate court that she never saw lasting changes; the Does continued to believe that their aggressive parenting style was best, even when shown alternatives.

Additionally, the children had not seen meaningful changes in their parents' behavior. Wilson testified that the children are reluctant to participate in family therapy because, despite multiple attempts, they have never seen improvement. Barton stated that she received phone calls from the children requesting to be excused from family visits because they no longer saw a benefit to the visitation.

Witnesses presented evidence that additional time to work towards reunification would be detrimental, particularly because it would force the children to remain in an unstable situation. During the six months prior to the termination trial, Barton believed the Does were regressing in their ability to care for the children, stating the Does have "gone backwards more than they have gone forwards," including not obtaining or maintaining employment and losing their home.

The evidence presented at the termination trial also showed a lack of parental bond between the Does and the children. Roper, Weaver, and Christine Sabey, the visitation supervisors, testified to the strained nature or complete lack of a parental bond between the children and the Does. Sabey testified that the children only attended visitation with their parents because they were required to, were miserable during the visits, and were relieved when they were over. Additionally, Sabey recalled that R.W. cried because she did not want to attend a visitation with the Does and that both John and Jane Doe ignored R.W. during visitation, choosing to engage with the other children instead. Wilson expressed that her major concern was a lack of secure attachment between the Does and their children and stated that she believed it would take a minimum of two to six years of therapy, with full commitment from all parties, to repair the children's bond to the parents. Multiple witnesses testified that the children seemed afraid of their parents, particularly John Doe, and the children took constant precautions in their conversations with John and Jane Doe to avoid the punishment and discipline that the children

10

felt may occur if they said the wrong thing. Finally, Uhl expressed her belief that the Does are pursuing reunification because they want to "win," not out of care for their children.

While in the Department's care, witnesses noticed improvements in L.W.'s and R.W.'s behavior and emotional capacities, and testified that these improvements waned during contact with John and Jane Doe. Roper testified that after removal, all of the children began to find their voice and express their desires; strengths that they did not previously possess because of internalized fear of repercussions. Wolfley expressed that he noted improvement in R.W.'s ability to regulate her emotions after coming into the Department's care. Melissa Weaver, the foster mother to K.J., L.W., and R.W., testified that while R.W. periodically showed defiant behavior while in her home, these outbursts were correlated to her visitations with the Does. Weaver stated that it would often take a day and a half for R.W. to be able to regulate her emotions after visitation with her parents. Weaver saw similarly increased defiant behavior when R.W. returned to foster care after the eight-month period of protective supervision in the Does' home. Likewise, Weaver, testified to noticeable changes in L.W.'s behavior when he returned from the protective supervision placement with the Does. Weaver stated that L.W. was an outgoing, good student when he first came into her care, but when he returned to the foster home after the period of protective supervision, he was withdrawn and scared and began to do poorly in school. Barton's testimony corroborated Weaver's account; after living with the Does during the period of protective supervision, Barton stated that L.W. lost his love for reading and began to show poor academic performance.

Many witnesses spoke to future safety concerns for the children if they were to be reunified with John and Jane Doe. P.J. testified that it was so difficult to live in the Does' home that he attempted suicide and he does not believe it would be safe for his siblings to live with the Does. Similarly, Barton testified that he does not believe it is safe for the children to return home and that the children have expressed fear of returning to the household.

Ultimately, Uhl, Wolfley, Barton, and Roper testified that the children need stability, trust, love, respect, structure, safe discipline, and permanency; all attributes missing from the Does' household. The magistrate court heard testimony that John and Jane Doe recently lost the home they were renting and are currently living in a motel that was not adequate for the children. Roper stated that R.W. expressed that she does not want to return home because she is worried about John Doe's temper. Barton told the magistrate court that L.W. expressed a similar desire

11

to remain in foster care because he has not seen a change in the Does. The evidence suggested all of the children expressed a desire to have finality in the case proceedings and ultimately, every worker who was asked believed that termination of the Does' parental rights is in the best interests of the children.

The termination trial included evidence of John Doe's failure to make meaningful changes over nearly two decades of intervention and that his neglect of the children significantly impacted the bond between him and his children. Further, the record indicates that L.W. and R.W. performed better when outside of John Doe's care and regressed upon contact with him. Finally, the evidence demonstrates justifiable concern about the safety of the children if returned to John Doe's care. Accordingly, substantial and competent evidence supports the magistrate court's finding that termination of John Doe's parental rights to L.W. and R.W. is in the best interests of the children.

**2. Substantial and competent evidence supports magistrate court's finding that terminating Jane Doe's parental rights is in the best interests of the children**

Similarly, substantial and competent evidence supports the magistrate court's finding that termination of Jane Doe's parental rights to K.J., T.J., and R.W. is in the best interests of the children. Jane Doe has a long history of child welfare intervention with over forty child welfare referrals and, as discussed above, witnesses testified that they did not recognize any significant, meaningful changes to Jane Doe's behavior despite being provided with a significant amount of resources. Although one witness testified that a bond existed between the children and Jane Doe, multiple other witnesses testified that the relationship was strained, nonexistent, or would need many years of therapy to recover. Further, Sabey testified that the children were frightened of Jane Doe, and Weaver testified that Jane Doe often appeared distracted by her phone during the children's appointments.

In addition to the improvements R.W. showed when removed from the Does' household, the evidence presented at the termination trial indicates that K.J. and T.J. showed similar developmental progress when under the Department's care. Through Wolfley, Weaver, and Barton's testimony, evidence was presented that while in the Department's care, K.J. became more open, social, comfortable with expressing himself, excited about his future, and less afraid of consequences, although he fears retaliation if returned to live with the Does. Uhl raised concern of the potential for K.J. to consider suicide if he does not continue to have access to

12

therapy. Barton added that T.J. has "flourished" and made a "complete turnaround" since being removed from the Does' household.

As previously discussed, multiple witnesses testified to the significant need for the children to have safety, stability, and structure and that it is in the best interests of the children to terminate the Does' parental rights. Like for John Doe, the termination trial included evidence of Jane Doe's long history of child welfare referrals and her failure to make meaningful changes over the course of a substantial period of intervention. Further, the record indicates that Jane Doe's neglect and abuse significantly impacted the bond between herself and her children. Finally, the testimony at the termination trial demonstrated that K.J., T.J., and R.W. performed better when outside of Jane Doe's care and that safety concerns raise obstacles to returning the children to the Does' home. Accordingly, substantial and competent evidence supports the magistrate court's finding that termination of Jane Doe's parental rights to K.J., T.J., and R.W. is in the best interests of the children.

## IV.
## CONCLUSION

Substantial and competent evidence supports the magistrate court's finding that John and Jane Doe neglected and abused their children and that the termination of their parental rights is in the best interests of the children. Accordingly, the magistrate court's order terminating parental rights is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.