# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41213

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE (2013-15) DOE. | ) ) ) | |
| ---------------------------------------------------------- | ) | |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | |
| Petitioner-Respondent, | ) ) | Twin Falls, November 2013 Term |
| and | ) ) | 2014 Opinion No. 30 |
| GUARDIAN AD LITEM, | ) ) | Filed: March 18, 2014 |
| Respondent, | ) ) | Stephen W. Kenyon, Clerk |
| v. | ) ) | |
| JANE (2013-15) DOE, | ) ) | |
| Respondent-Appellant. | ) | |

_____

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Thomas D. Kershaw, Magistrate Judge.

The order of the magistrate court terminating Jane Doe's parental rights is <u>affirmed</u>.

Marilyn Paul, Twin Falls County Public Defender, attorney for Appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent Idaho Department of Health & Welfare. James T. Baird argued.

Jamie LaMure, Kimberly, attorney for Guardian ad litem.

_____

HORTON, Justice.

This is an expedited appeal by Jane Doe from an order terminating her parental rights to five minor children on the grounds of neglect. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

There are five children involved in this case: C.C., M.R., G.C., M.C.C., and A.C.C. The children have four different fathers. This appeal is the culmination of several child protection actions involving Jane Doe. The first child protection action was filed by the State on August 17, 2006. C.C., who was then one year old, was taken from Jane Doe because of an unsafe and unhygienic home and Jane Doe's drug use. There was also evidence of domestic abuse by the man who would later become M.R.'s father. Jane Doe completed a case plan including drug treatment and other tasks, and C.C. was returned to Jane Doe on October 25, 2007.

The second child protection case was filed on November 4, 2009, involving the two children that Jane Doe had at the time, C.C. and M.R. The children tested positive for drugs. Jane Doe was pregnant with G.C., whom the magistrate found had been "almost certainly exposed to methamphetamine *in utero*." Again, domestic violence was present, this time perpetrated by G.C.'s father. Jane Doe participated in another case plan, including child protection drug court. During drug court, she relapsed twice. Despite the relapses, Jane Doe graduated from the program in May of 2011. One month later, she gave birth to twins, M.C.C. and A.C.C.

On April 1, 2012, shortly after 3:00 a.m., police officers attempted to serve a warrant at an apartment in Twin Falls. During a struggle in which the subject attempted to flee, the officers noticed twins, younger than one year old, crawling on the floor. Methamphetamine and drug paraphernalia were present in the apartment. Jane Doe told an Idaho Department of Health and Welfare ("IDHW") caseworker that she had left her three younger children at the apartment to be cared for by a friend because she had been evicted. She admitted to recent use of methamphetamine. The caseworker believed that Jane Doe and her children were living out of her car. The other children were located and all five were placed in foster care.

The final child protection case was filed on April 2, 2012. Following a hearing on May 22, 2012, the magistrate court granted default judgment against two of the fathers of Jane Doe's five children and made a finding of aggravated circumstances as to all of the children and parents. Pursuant to I.C. § 16-1619(6)(d), this meant IDHW was not required to use reasonable efforts to reunify the children with the parents. Jane Doe filed a Motion for Reconsideration of Aggravated Circumstances Finding on June 5, 2012, which was denied after a hearing. Although the magistrate court's finding of aggravated circumstances was an appealable order, I.C. § 16-1625(1)(c), Jane Doe did not appeal the order. The magistrate court approved IDHW's permanency plan with respect to the parental rights of all the parents except for the father of

M.C.C. and A.C.C. The State filed a Motion for Termination of Parent-Child Relationship on June 26, 2012. The magistrate court received evidence on May 13 and 14, 2013, and found that C.C., age eight, had been in foster care for 44 months; M.C., age six, had been in foster care for 32 months; G.C., age three, had been in foster care for 14 months; and M.C.C. and A.C.C., ages two, had been in foster care for 14 months. On July 2, 2013, the magistrate court ordered the termination of the parental rights of Jane Doe with respect to all five children and the parental rights of three of the fathers. Jane Doe timely appealed.

## II. STANDARD OF REVIEW

The grounds for terminating a parent-child relationship must be proved by clear and convincing evidence. *In the Matter of Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).

> Our review of factual findings is limited, and where the trial court has granted a petition terminating parental rights, that conclusion will not be disturbed on appeal so long as there is substantial competent evidence in the record to support the findings. Furthermore, in reviewing such findings, this Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated.

*Id.* (internal quotations and citations omitted). In our review, we are mindful that

> [t]he finder of fact has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties. In a parental-termination case, this is immensely important. A cold record of the trial does not tell the whole story. An independent review by our court could not take into account the trial court's superior view of the entire situation.

*Id.* (quoting *Thompson v. Thompson*, 110 Idaho 93, 96, 714 P.2d 62, 65 (Ct. App. 1986)).

## III. ANALYSIS

The issues presented in this appeal are (1) whether the magistrate court erred in finding aggravated circumstances; (2) whether the magistrate court erred when it found the children to have been neglected pursuant to I.C. § 16-2002(3)(b) and I.C. § 16-1602(25); and (3) whether the magistrate court erred when it found termination of Jane Doe's parental rights to be in the best interests of the children. We address these issues in turn.

**A. Jane Doe has failed to demonstrate that the trial court erred in finding aggravated circumstances.**

Jane Doe contends that the magistrate court's finding of aggravated circumstances deprived her of due process and equal protection because she was unable to complete a case plan. In addition to responding to the merits of her claims, IDHW contends that Jane Doe has

waived this issue by failing to timely appeal the finding. We address the preliminary issue of waiver before turning to the substance of Jane Doe's claims of error.

<u>1. Jane Doe's failure to appeal the magistrate court's finding of aggravated circumstances does not bar review of her claim of error.</u>

The finding of aggravated circumstances was clearly an appealable order. Idaho Code § 16-1625(1) provides:

> An aggrieved party may appeal the following orders or decrees of the court to the district court, or may seek a direct permissive appeal to the supreme court as provided by rules adopted by the supreme court:
>
> (a) An adjudicatory decree entered pursuant to section 16-1619, Idaho Code;
>
> ***
>
> (c) Any order subsequent to the adjudicatory decree that authorizes or mandates the department to cease reasonable efforts to make it possible to return the child to his home, *including an order finding aggravated circumstances. . . .*

(emphasis added). Consistent with this statutory provision,[1] both the Idaho Juvenile Rules and the Idaho Rules of Civil Procedure authorize appeals to the district court from an order finding aggravating circumstances. *See* I.J.R. 49(a) ("An aggrieved party may appeal to the district court those orders of the court in a C.P.A. action specified in I.C. § 16-1625"); I.R.C.P. 83(a)(1)(6) ("an appeal must first be taken to the district judges division of the district court from any of the following judgments or orders rendered by a magistrate: … Any order, judgment or decree by a magistrate in a special proceeding for which an appeal is provided by statute.").

However, the conclusion that an order *may* be appealed does not compel the conclusion that the order *must* be appealed or forever be foreclosed from appellate review. Rule 83 of the Idaho Rules of Civil Procedure governs appeals from the magistrate division to the district courts of this state. *Vierstra v. Vierstra*, 153 Idaho 873, 877, 292 P.3d 264, 268 (2012). However, Rule 83 is silent as to the narrow question presented: whether the failure to appeal an interlocutory order that is appealable as a matter of right forever forecloses appellate review. Rule 83(e) requires that an appeal of such an order be brought within 42 days of the entry of the order. Rule

---

[1] One can certainly question the wisdom of granting the right to appeal an interlocutory order. There is no provision for an expedited appeal of the decision to this Court. A parent challenging a determination of aggravated circumstances may well have incentive to slow down the process. This can easily be accomplished by an appeal to the district court and, if unsuccessful there, an appeal to this Court. If this Court were to assign the appeal to the Court of Appeals, then the parent could petition for review. In the interim, the child(ren) would sit in limbo. This is certainly inconsistent with the framework of the Child Protection Act, which otherwise encourages steady progress of these proceedings. However, it is not the role of this Court to overrule a decision made by the Legislature unless the decision contravenes the state or federal constitution, or contrary to procedural rules of this Court.

4

83(s) provides that the 42 day requirement is jurisdictional and specifies the remedy; the failure to timely file a notice of appeal "shall cause automatic dismissal of such appeal upon motion of any party, or upon initiative of the district court."

Rule 83(s) has no application in this instance, because this case does not involve an attempt to present an untimely appeal to the district court. Rather, this appeal is before this Court as a direct appeal from an order terminating parental rights that is expressly authorized by I.A.R. 11.1. Thus, as an appeal to this Court, this appeal is governed by the Idaho Appellate Rules. *See* I.A.R. 1 ("These rules shall govern all proceedings pending in the Supreme Court on the effective date or thereafter commenced. . . .")

Jane Doe timely appealed from the order terminating her parental rights. Idaho Appellate Rule 17(e)(1) provides, in pertinent part, as follows: "The notice of appeal shall designate the judgment or order appealed from which shall be deemed to include, and present on appeal: (A) All interlocutory judgments and orders entered prior to the judgment or order appealed from. . . ." This Court has interpreted I.A.R. 17(e)(1) as permitting a party to "properly challenge" interlocutory orders. *Thomas v. Thomas*, 150 Idaho 636, 641, 249 P.3d 829, 834 (2011).

Although this Court has not previously defined the term "interlocutory order," much less attempted to define the distinction between an interlocutory order and a final order, our previous decisions suggest that the critical distinction is that an interlocutory order is subject to modification, amendment, or outright reversal by the judge entering that order. *See State v. Thorngren*, 149 Idaho 729, 736, 240 P.3d 575, 582 (2010) ("[A] court retains broad discretion over interlocutory evidentiary rulings which may be modified at any time until entry of final judgment.") (quoting *Ritter v. State*, 532 S.E.2d 692, 695 (Ga. 2000)); *Coeur d'Alene Mining Co. v. First Nat'l Bank of N. Idaho*, 118 Idaho 812, 823, 800 P.2d 1026, 1037 (1990) (trial courts deciding motions to reconsider pursuant to I.R.C.P. 11(a)(2)(B) "should take into account any new facts presented by the moving party that bear on the correctness of the interlocutory order."). The preeminent legal dictionary defines "interlocutory: as "Provisional; interim; temporary; not final." Black's Law Dictionary 731 (5th ed. 1979). By contrast, a "final order" is "[o]ne which terminates the litigation between the parties and the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." *Id*. at 567. In our view, the Michigan Supreme Court provided the best definition, when it stated: "It is the essence

of an interlocutory order or decree that it may on final hearing be set aside, altered, changed, or modified." *Wurzer v. Geraldine*, 256 N.W. 439, 444 (Mich. 1934).

Applying this definition, we conclude that the finding of aggravated circumstances was an interlocutory order. This is because the magistrate court's finding of aggravated circumstances was made pursuant to I.C. § 16-1619(6)(d). Idaho Code § 16-1622(1)(b) provides in pertinent part:

> A motion for revocation or modification of an order issued under section 16-1619, Idaho Code, may be filed by the department or any party; provided that no motion may be filed by the respondents under this section within three (3) months of a prior hearing on care and placement of the child.

As the order containing the finding of aggravated circumstances was subject to modification, it was an interlocutory order. Thus, the finding of aggravated circumstances is legitimately before this Court by operation of I.A.R. 17(e)(1)(A). We therefore turn to the substance of Jane Doe's claims.

2. Jane Doe's claims of error in the finding of aggravated circumstances are without merit.

Jane Doe's opening brief identifies the following issue: "Was the factual basis alleged so erroneous as to invalidate the finding of aggravated circumstances?" Presumably, this was intended to be an assertion that the magistrate court's finding of aggravated circumstances was not based upon substantial competent evidence. Idaho Code § 16-1602(5) provides the following definition:

> "Aggravated circumstances" include, but are not limited to:
>
> (a) Circumstances in which the parent has engaged in any of the following:
>
> (i) Abandonment, chronic abuse or chronic neglect of the child. Chronic neglect or chronic abuse of a child shall consist of abuse or neglect that is so extreme or repetitious as to indicate that return of the child to the home would result in unacceptable risk to the health and welfare of the child.
>
> (ii) Sexual abuse against a child of the parent. Sexual abuse, for the purposes of this section, includes any conduct described in section 18-1506, 18-1506A, 18-1507, 18-1508, 18-1508A, 18-6101, 18-6108 or 18-6608, Idaho Code.
>
> (iii) Torture of a child; any conduct described in the code sections listed in section 18-8303(1), Idaho Code; battery or an injury to a child that results in serious or great bodily injury to a child; voluntary manslaughter of a child, or aiding or abetting such voluntary manslaughter, soliciting such voluntary manslaughter or attempting or conspiring to commit such voluntary manslaughter;
>
> (b) The parent has committed murder, aided or abetted a murder, solicited a murder or attempted or conspired to commit murder; or

(c) The parental rights of the parent to another child have been terminated involuntarily.

The entirety of Jane Doe's argument on this issue is as follows:

> Appellant contends that the State presents insufficient evidence in the adjudicatory hearing to support the finding of aggravated circumstances. Several of the factual basis [sic] were interested in the termination hearing, as set forth elsewhere especially under the section discussing failure of the Court to properly consider evidence in the termination trial, especially under the circumstances of removal. The finding us [sic] required to be based upon a preponderance of the evidence I.C. § 16-1619(4), and it is contended that the evidence did not meet that standard.

The conclusion of Jane Doe's analysis of the "circumstances of removal" is as follows: "The Court appears to have adopted the State's version of events. . . . The Court does not appear to acknowledge that these facts were contested." In the context of termination of parental rights, this Court has stated:

> Magistrate courts generally have broad discretion in their deliberations; this Court does not reweigh evidence, but "defer[s] to the trial court's unique ability to 'accurately weigh the evidence and judge the demeanor of the witnesses' and take into account the trial court's 'superior view of the entire situation.' " [*State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007)] (quoting *Doe v. Roe*, 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999)). "Findings are competent, so long as they are supported by substantial, albeit possibly, conflicting, evidence." *Roe v. Doe*, 142 Idaho 174, 177, 125 P.3d 530, 533 (2005) (internal quotations omitted) (quoting *Roberts v. Roberts*, 138 Idaho 401, 405, 64 P.3d 327, 331 (2003)).

*Doe v. Doe*, 148 Idaho 243, 246, 220 P.3d 1062, 1065 (2009). Jane Doe's acknowledgement that the State presented evidence of aggravated circumstances, which she disputed, reflects the existence of substantial, competent evidence to support the finding of aggravated circumstances.

Jane Doe also asserts that the magistrate court's finding of aggravated circumstances deprived her of due process and equal protection because she was unable to complete a case plan. The entirety of her legal argument as to her due process claim is as follows: "Appelant [sic] contends that due process under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section Thirteen of the Idaho Constitution require due process, as well as Santosky v. Kramer, 455U.S. [sic] 745, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982)."

Jane Doe's argument is correct as far as it goes. This Court has recognized that parents have due process rights in proceedings to terminate their parental rights. *In Interest of Bush*, 113 Idaho 873, 875, 749 P.2d 492, 494 (1988). However, Jane Doe has presented no legal argument

supporting her contention that the termination of IDHW's duty to use reasonable efforts in reunifying her with the children violated her due process rights. Even in an appeal from the termination of parental rights, "we will not consider an issue which is not supported by cogent argument and authority." *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 503 n.1, 260 P.3d 1169, 1174 n.1 (2011) (citing *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010); I.A.R. 35(a)(6)).

Jane Doe's equal protection argument is equally deficient. The entirety of her argument is as follows:

> Appellant asserts that the Fourteenth Amendment of the United States Constitution provides for equal protection. The vagueness of the standards to be employed when the "catchall" is utilized runs afoul of equal protection as set forth in Bush v. Gore 00947 (United States Supreme Court, December 12, 2000, per curiam). Appellant contends that the vagueness is an "as applied" deficiency.

In *Arel v. T & L Enterprises, Inc.*, 146 Idaho 29, 189 P.3d 1149 (2008), we discussed our approach to analyzing equal protection challenges to legislative enactments.

> When a party challenges the constitutionality of a statute, this Court presumes the statute is constitutional unless that party proves otherwise. *Luttrell v. Clearwater County Sheriff's Office*, 140 Idaho 581, 585, 97 P.3d 448, 452 (2004). "In addressing equal protection violations, the Court must first identify the classification being challenged and, second, it must determine the constitutional standard of review." *Venters v. Sorrento Delaware, Inc.*, 141 Idaho 245, 251, 108 P.3d 392, 398 (2005).

*Id.* at 34, 189 P.3d at 1154. Jane Doe has made no effort to identify the classification which she challenges nor has she identified the appropriate standard of review. Rather, her argument appears to advance a due process argument based upon the vagueness of a statutory provision that she does not identify. *See Alcohol Beverage Control v. Boyd*, 148 Idaho 944, 949, 231 P.3d 1041, 1046 (2010) (discussing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)). In the absence of cogent legal argument, this Court will not further consider Jane Doe's claim of violation of her right to equal protection under the law.

Jane Doe advances other legal arguments with even less analysis than the three we have discussed here.[2] They each fall short of the requirement of cogent legal argument. Thus, we

---

[2] These include: (1) a claim that the aggravated circumstances determination violated Article V, § 26 of the Idaho Constitution, which mandates uniform court procedures in this state; (2) a due process argument related to notice that is completely unintelligible; and (3) the assertion that the aggravated circumstances determination ought to be subject to a clear and convincing standard. Given the practical effect of an aggravated circumstances finding, it is regretful that this final claim was not supported by meaningful legal argument.

8

conclude that Jane Doe has failed to demonstrate that the magistrate court erred in finding the existence of aggravating circumstances. We thus turn to the magistrate court's finding that Jane Doe's parental rights should be terminated.

**B. Jane Doe has failed to demonstrate that the trial court erred in finding neglect.**

"Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child." *Idaho Dep't of Health & Welfare v. Doe II,* 150 Idaho 36, 41, 244 P.3d 180, 185 (2010). Idaho Code § 16–2005 specifies the grounds upon which parental rights may be terminated. "Termination is only appropriate if an enumerated ground for termination exists and termination is in the child's best interests. I.C. § 16–2005(1)." *Idaho Dep't of Health & Welfare v. Doe (2011-18)*, 152 Idaho 644, 647, 273 P.3d 685, 688 (2012). One ground on which the parent-child relationship may be terminated is where "the parent has neglected or abused the child." I.C. § 16-2005(1)(b). Idaho Code § 16-2002(3) defines "neglected" for purposes of the termination of the parent-child relationship as follows:

"Neglected" means:

> (a) Conduct as defined in section 16-1602(26), Idaho Code; or
>
> (b) The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:
>
>> (i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and
>>
>> (ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

Idaho Code § 16-1602(26) defines "neglected" as follows:

"Neglected" means a child:

> (a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; however, no child whose parent or guardian chooses for such child treatment by prayers through spiritual means alone in lieu of medical treatment shall be deemed for that reason alone to be neglected or lack parental care necessary for his health and well-being, but this subsection shall not prevent the court from acting pursuant to section 16-1627, Idaho Code; or
>
> (b) Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability,

9

the child lacks the parental care necessary for his health, safety or well-being; or

(c) Who has been placed for care or adoption in violation of law; or

(d) Who is without proper education because of the failure to comply with section 33-202, Idaho Code.

Whether neglect has occurred is a question of fact to be established by clear and convincing evidence. *Rhodes v. Idaho Dep't of Health & Welfare*, 107 Idaho 1120, 695 P.2d 1259 (1985). Idaho's termination statute exists "not merely to alleviate harm but to prevent it." *In the Interest of Cheatwood*, 108 Idaho 218, 220, 697 P.2d 1232, 1234 (Ct. App. 1985).

The foster parents who received C.C. on April 1, 2012, described C.C. as dirty, wearing tattered clothes, tired, and "goofy." C.C.'s teacher described C.C. as thin, dirty, hungry, unfocused, tired, and "squirrely." While in Jane Doe's custody, C.C. was frequently tardy or absent from school. After being placed in foster care, C.C. was reported to be cleaner and more focused at school. C.C. is being counseled for behaviors including aggression, noncompliance, fear, confusion, and anxiety. While in Jane Doe's custody, C.C. missed a number of counseling sessions and tested positive for methamphetamine.

Like C.C., M.C. also tested positive for methamphetamine. The magistrate court found evidence of sexual touching by a sibling and neighborhood children. There is evidence that when first taken into foster care, M.C. was gorging on food. G.C. was also reported as gorging on food and screaming at night. M.C.C. and A.C.C. also tested positive for methamphetamine and have been in foster care since they were nine months old.

Jane Doe argues that G.C. and M.C. were "happy and healthy" at the time a witness visited them. She disputes the circumstances under which the children were removed, arguing that although it is true she was evicted from her apartment, she had rented a motel room where there was some food. Jane Doe does not dispute that three of the children were at the house on April 1, 2012, but she disputes whether any of them were crawling on the floor. She argues that these factual disputes show that termination of parental rights was inappropriate.

Jane Doe asks this Court to reweigh the evidence, stating that the magistrate court "appears to have adopted the State's version of events." Although she is correct in this regard, she fails to acknowledge that the magistrate court was the finder of fact. Although Jane Doe disputed some of the evidence offered to show neglect, it was up to the magistrate court to resolve those disputes. The magistrate court did so. The magistrate court found that all of the

10

children have spent a long period of time in foster care and "during most of the rest of their lives have been subjected to drugs, dangerous and violent people and uncertain and unsafe living conditions." Jane Doe has relapsed numerous times, demonstrating her inability to provide for the children's safety and well-being and causing them to be exposed to methamphetamine. The magistrate court found that C.C. has been exposed to domestic violence, a point that Jane Doe does not dispute. This, coupled with Jane Doe's efforts to reunite with the perpetrator, reflects Jane Doe's unwillingness or inability to provide for C.C. and the other children's safety. Jane Doe does not dispute that M.C. has experienced inappropriate sexual contact. There is substantial evidence, corroborated by C.C.'s teacher that, despite Jane Doe's contentions to the contrary, the children were not clean and were hungry. M.C.C. and A.C.C. have spent most of their lives in foster care. Jane Doe failed to get her children to school and to counseling sessions and has not provided any financial support to her children while in foster care.

It is difficult to find in this record any area of parental responsibility Jane Does has consistently met. We conclude that substantial and competent evidence supports the magistrate court's finding of neglect.

**C. Jane Doe has failed to demonstrate that the trial court erred in finding that termination of her parental rights was in the best interests of the children.**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In the Matter of Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When considering the best interests of the child, a trial court may consider numerous factors including the improvement of the child while in foster care. *See Doe v. Idaho Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992). Expert testimony is not required to establish that termination would be in the child's best interests. *Doe v. Roe*, 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999). When determining whether termination is in the child's best interests the trial court may consider the stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, improvement of child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *See id.*; *see also Idaho Dep't of Health & Welfare v. Doe*, 133 Idaho 826, 831, 992 P.2d 1226, 1231 (Ct. App. 1999).

There is evidence that the children have improved while in foster care. Before entering foster care, C.C. was frequently tardy or absent from school. When at school, C.C. was dirty,

hungry and unfocused. Since C.C. has been in foster care C.C.'s teachers have noted an improvement in focus and performance at school. C.C. is no longer exposed to domestic violence. There is no indication that Jane Doe has taken any steps to establish a stable home for C.C. or her other children. Indeed, Jane Doe has failed to secure a job or achieve the financial stability necessary to provide a stable home. There is evidence that Jane Doe has reunited with the perpetrator of the domestic violence that C.C. witnessed. For the past six years, Jane Doe has demonstrated an inability to refrain from methamphetamine use.

Jane Doe testified that she was waiting to take steps to improve her life—such as obtaining employment—until she finds out what happens with her children. In *Doe v. Roe*, this Court upheld the trial court's termination of Roe's parenting rights because Roe's plans for the future were uncertain. 133 Idaho at 810, 992 P.2d at 1210. In that case, Roe had not taken any definite steps to obtain steady employment or provide for an otherwise stable environment. *Id.* This Court affirmed the trial court's determination that such uncertainty was not in the child's best interests because "it is not in the best interests of [the minor] child to have to wait while possibly other types of legal proceedings develop regarding visitation, custody, support, etc. The child deserves stability and certainty in her life, none of which her mother can provide." *Id.* Likewise, Jane Doe has failed to demonstrate an ability or willingness to provide stability and certainty for her children now or in the future. The magistrate court did not err in finding that termination of Jane Doe's parental rights was in the best interests of the children.

## IV. CONCLUSION

The magistrate court's order terminating Jane Doe's parental rights to her five children is affirmed. Costs on appeal are awarded to Respondents.

Chief Justice BURDICK, Justices EISMANN, J. JONES and Justice Pro Tem SCHROEDER **CONCUR**.