IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 48445

| In the Interest of:  John Doe I, Jane Doe I, John Doe II, Jane Doe II, and Jane Doe III, Children Under Eighteen (18) Years of Age. | ) ) ) ) | |
|---|---|---|
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) | Filed:  March 22, 2021 |
| Petitioner-Respondent, | ) ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) | |
| JOHN DOE (2020-48), | ) ) | |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Jerome County.  Hon. Jennifer Haemmerle, Magistrate.

Judgment terminating parental rights, affirmed.

James Law Office, PLLC; Michelle L. Agee, Jerome, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

Theodore R. Larsen, Jerome, for guardian ad litem

_____

BRAILSFORD, Judge

John Doe (Father) appeals from the magistrate court's judgment terminating his parental rights to his five minor children.  He argues the court erred by concluding the termination of his parental rights is in the children's best interests.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and Jane Doe (Mother) are the biological parents of five minor children:  J.M. (born January 2010), I.M. (born February 2011), D.M. (born March 2012), S.M. (born February

1

2015), and A.M. (born February 2016). Mother and Father's parental rights have been the subject of three, separate child protection cases. When D.M. was born in 2012, Mother and Father lived in Las Vegas, and D.M. tested positive for methamphetamine. As a result, the State of Nevada initiated a child protection case, and Mother and Father were required to and did complete a case plan.

Shortly before S.M. was born in 2015, Father moved from Las Vegas to Jerome, Idaho, and Mother followed after S.M. was born. In 2016, Mother took S.M. to the hospital because she was having seizures. S.M. tested positive for methamphetamine, and Mother was criminally charged and convicted of felony injury to a child for driving S.M. to the hospital while under the influence of methamphetamine. As a result of this incident, the Idaho Department of Health and Welfare (Department) initiated a child protection case in May 2016. The parents completed their case plan, and the case was dismissed in June 2017.

A few months later, in September 2017, the Department received a complaint from the children's school that the parents were not meeting the children's needs. Generally, the report was the children were hungry, dirty, and otherwise unkempt. A Department social worker met with Mother at the parents' home, noticed possible drug paraphernalia, and asked to have the children drug tested. All five children tested positive for methamphetamine, and law enforcement declared the children to be in imminent danger on September 27.

On September 29, the Department filed a petition under the Child Protective Act, Idaho Code §§ 16-1601, *et seq.*, commencing this case. In November, the magistrate court granted the Department legal custody of the children, all of whom were in foster care, and approved and adopted a case plan for the parents. This case plan required Father, among other things, to maintain and provide proof of a legal form of income; to complete a substance abuse assessment and treatment; to complete parenting classes and demonstrate skills learned from those classes; to ensure all five children attend their appointments and services; and to maintain safe, stable, sanitary, and drug-free housing.

At some point, the Department allowed the parents extended home visitation with the youngest children, S.M. and A.M. The Department, however, terminated the extended visitation after a Department social worker observed a rodent infestation in the parents' home; the parents failed to get the children to their appointments; and Father tested positive for methamphetamine. Thereafter, in about February 2019, Mother was arrested on misdemeanor charges.

2

At that point, the United States Department of Homeland Security took Mother into custody and detained her on an immigration hold in Tacoma, Washington. After Mother was arrested and detained, Father moved back to Las Vegas despite that the children remained in foster care in Idaho. Although Father attempted to transfer the child protection case to Nevada, his request for an interstate compact was denied. Eventually, after ten months of detention, Mother posted bond and was released in November 2019. After her release, she joined Father in Las Vegas.

In December 2019, the Department filed a petition to terminate the parents' parental rights, alleging they had neglected the children by failing to complete the case plan. At some point thereafter, the parents returned to Idaho. The magistrate court scheduled a trial on the Department's petition for May 2020, but in April the court appointed a different attorney to represent Father because the parents had separated and were planning to divorce. According to Mother, in April she began living with a person to whom she referred as her fiancé, although she still remained married to Father. As a result of the change in counsel for Father, the court rescheduled the trial for July.

The magistrate court held a four-day trial on the Department's petition on July 7 and 8 and September 3 and 4. During the trial, the court heard testimony from three social workers; a child welfare clinician; a family preservation specialist; the guardian ad litem; the foster parents for I.M., for J.M. and D.M., and for S.M. and A.M.; the parents; and the children's maternal grandmother. On November 6, the court issued a 108-page memorandum decision granting the Department's petition and terminating the parents' parental rights. In this decision, the court cites two statutory provisions for terminating their parental rights: I.C. § 16-2002(3)(a) (providing termination for neglect as defined by I.C. § 16-1602(31)) and I.C. § 16-2002(3)(b) (providing termination for failure to comply with court order). The court's decision states that the court considered the Department's petition to allege each "type[] of neglect" defined by these statutes.

Then, the magistrate court found by clear and convincing evidence that the parents neglected the children by "failing to provide parental care necessary for their health, morals and well-being" and similarly that "the parents are unable to discharge their responsibilities to the children and as a result the children lack the parental care necessary for their health, safety and well[-]being." Further, the court alternatively found by clear and convincing evidence that

3

neither parent completed the case plan. Finally, the court found that the termination of the parents' parental rights is in the children's best interests. Father timely appeals the court's decision.[1]

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006).

Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141

---

[1] Mother separately appeals the termination of her parental rights.

P.3d 1057, 1060 (2006). "When deciding whether findings are clearly erroneous, [the appellate] Court does not substitute its view of the facts for that of the trial court. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of the witnesses." *In re Doe*, 152 Idaho 910, 913, 277 P.3d 357, 360 (2012) (citation omitted).

## III.

## ANALYSIS

On appeal, Father does not challenge the magistrate court's finding that he neglected the children. Rather, Father only challenges the court's conclusion that the termination of his parental rights is in the children's best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Father fails to identify any of the magistrate court's factual findings that he contends are clearly erroneous. Instead, Father makes essentially three arguments--all of which directly contradict the court's findings. First, Father argues he "has been successful in addressing substance abuse issues." To the contrary, however, the court found that Father's "history does not support a finding that he is capable of remaining sober." For example, the court found that Father began using methamphetamine when he was seventeen years old, stopped his drug use "cold turkey" once, and twice participated in treatment programs but that Father has relapsed each time. Further, the court found Father fails to take responsibility for his substance abuse and blames others for his drug use, including his co-workers, friends, and social media. Finally, the court found Father is "not in any active counseling or treatment or support program" but instead

5

unrealistically plans "to avoid 'toxic people' who 'make him' fall back into drug use." Substantial and competent evidence, including Father's testimony, supports these findings, which are contrary to Father's assertion that he has successfully addressed his substance abuse issues.

Second, Father asserts now that he is aware of the "medication and therapy" the children have received in foster care, he can continue that treatment. The magistrate court, however, found to the contrary. For example, the magistrate court found that all five children have various levels of developmental delays including verbal, physical, emotional, social, and academic. Many of those delays are serious in nature. One child has autism, is nonverbal, and is learning sign language in foster care, although Father has not made a concerted effort to learn sign language. Father "was not aware of special needs for his children," and "despite completing [parenting] classes, [Father] has not demonstrated the skill learned from the classes." Further, Father has never been a primary caregiver; he historically relied on Mother and then on the children's foster parents to meet the children's daily nonfinancial needs; and his plan to rely on his mother-in-law in the future to provide the children's daily needs is not realistic. Substantial and competent evidence supports these findings that Father fails to recognize and is unable to provide for the children's many special needs.

Finally, Father asserts that he "attempted to seriously and significantly work the case plan during 2020" but that the coronavirus pandemic "severely affected and limited his ability to do so." Father, however, fails to identify what aspects of his case plan he could not perform as a result of the pandemic and makes no argument explaining how the pandemic thwarted his efforts to perform various aspects of the case plan. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018).

Further, the magistrate court acknowledged the pandemic "severely" impacted the "nature and quality" of visitation with the children in 2020, including physical visitation. This acknowledgment indicates the court understood the pandemic's impact on in-person visitation and did not attribute visitation difficulties related to the pandemic to Father. Moreover, while Father argues the pandemic precluded him from performing his case plan, this argument overlooks that Father voluntarily and intentionally left the children in Idaho for approximately a

6

year when he lived in Las Vegas from about February 2019 until early 2020 when the pandemic began. As a result, Father missed approximately sixty in-person visitation opportunities. The magistrate court found Father's explanation for moving to Las Vegas while the children remained in Idaho not to be credible and that this "move to Nevada cost [Father] an important opportunity to interact with the children," to "engage in personal visitation with them," and to participate in the children's appointments and therapies.

Meanwhile, the magistrate court found that the children have made "steady progress emotionally, educationally, developmentally, and socially in the care of the foster parents and with regular school attendance and multiple therapies." Father does not dispute this finding. Rather, he acknowledges the children "have greatly improved" while in foster care.

## IV.

## CONCLUSION

We hold substantial and competent evidence supports the court's findings that the termination of Father's parental rights is in the children's best interests. Accordingly, we affirm the judgment terminating Father's parental rights.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.